David J. Beauvais (CA Bar # 84275)
LAW OFFICE OF DAVID J. BEAUVAIS
Tribune Tower, 20th Floor
409-13th Street
Oakland, California 94612
Telephone: (510) 832-3605
Facsimile:  (510) 832-3610

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN  DISTRICT OF CALIFORNIA

| | |
|---|---|
| VUK NASTIC; VERICA NASTIC individually and in her capacity as Next Friend of the minors, D.N. and N.N. and DOES 1 through 20,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN JOAQUIN; LIANNE WILLEY, individually and in her capacity as a social worker for the COUNTY OF SAN JOAQUIN; VENUS ESPARZA-ZAVALA individually and in her capacity as a social worker for the COUNTY OF SAN JOAQUIN; LAZARO GONZALEZ, individually and in his capacity as a social worker for the COUNTY OF SAN JOAQUIN; NICHOLAS MORENO JR., individually and in his capacity as a peace officer for the COUNTY OF SAN JOAQUIN; COLIN MCGRATTAN, individually and as an agent of the COUNTY OF SAN JOAQUIN Human Services Agency and DOES 1-20,<br><br>Defendants.<br>_____ | No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>Violation of Civil Rights<br>Title 42, U.S. Code Section 1983<br><br>Jury Trial Demanded |

Plaintiffs allege:

**JURISDICTION AND VENUE**

1. This court has jurisdiction over the subject matter of this action pursuant to Title 28, United States Code Sections 1331, 1332 and 1343.

2. The conduct upon which this suit is based occurred in this judicial district.

3. Plaintiffs are informed and believe and on that basis alleges that each of the named defendants resides in this judicial district.

## PARTIES

4. Plaintiff VUK NASTIC is the parent and legal custodian of the minor plaintiffs, D.N. and N.N.

5. Plaintiff VERICA NASTIC is the parent and legal custodian of the minor plaintiffs, D.N. and N.N. and appears herein individually and as Next Friend of the minors, D.N. and N.N.

6. Plaintiff D.N. is a minor born in 2001.

7. Plaintiff N.N. is a minor born in 2005.

8. Defendant COUNTY OF SAN JOAQUIN is a local public entity organized under the laws of the State of California.

9. Defendant LIANNE WILLEY is, and was at all times mentioned herein, a social worker and in doing the things hereinafter alleged, acted under color of state law as an agent of the COUNTY OF SAN JOAQUIN Human Services Agency and with its full consent and approval.

10. Defendant VENUS ESPARZA-ZAVALA is, and was at all times mentioned herein, a supervisor of Lianne Willey and in doing the things hereinafter alleged, acted under color of state law as an agent of the COUNTY OF SAN JOAQUIN Human Services Agency and with its full consent and approval.

11. Defendant LAZARO GONZALEZ is, and was at all times mentioned herein, a social worker and in doing the things hereinafter alleged, acted under color of state law as an agent of the COUNTY OF SAN JOAQUIN Human Services Agency and with its full consent and approval.

12. Defendant NICHOLAS MORENO JR. is, and was at all times mentioned herein, a detective and in doing the things hereinafter alleged, acted under color of state law as an agent of the COUNTY OF SAN JOAQUIN Sheriff's Department and with its full consent and approval.

13. Defendant COLIN MCGRATTAN is, and was at all times mentioned herein, a licensed Marriage and Family Therapist in private practice under contract with the COUNTY OF SAN JOAQUIN Human Services Agency and in doing the things hereinafter alleged, acted under color of state law as an agent of the COUNTY OF SAN JOAQUIN Human Services Agency and with its full consent and approval.

14. Plaintiffs do not know the true names and capacities of the defendants sued herein as DOES 1 through 20.  Plaintiffs are informed and believe and on that basis allege that said DOES are each responsible in some manner for the injuries plaintiffs sustained herein and that each of the defendants is the agent, servant, or employee of the others in doing the acts complained of herein and acted within the scope of that agency or employment.  Plaintiffs will amend their complaint to allege the identities of the DOES when ascertained.

15. In doing the things herein alleged, the defendants, and each of them, acted as the agent, servant, employee and in concert with each of the remaining defendants.

**STATEMENT OF FACTS**

16. On June 8, 2010, defendant MORENO accompanied by other deputy sheriffs and defendant GONZALEZ executed a search warrant at the residence of the plaintiffs. The search warrant authorized a search for evidence of child pornography.

17. The search warrant turned up no evidence of crime.

18. Plaintiffs had no record of arrests or convictions.  They are Serbian nationals residing lawfully in the United States for more than 15 years at the time of the search.

19. The warrant was obtained on the affidavit of MORENO.

20. An investigation of child pornography involving the plaintiffs was opened after Vuk Nastic turned in his employer-issued laptop to resolve a virus in its email program.  Upon

COMPLAINT FOR DAMAGES

examination of the laptop, the employer discovered approximately 70 photographs and two videos depicting the minors, then five and nine years old, in states of partial and total undress. The employer contacted authorities after viewing the photos. Vuk Nastic's employment was terminated for violation of a company policy prohibiting use of the laptop except for business purposes. The employer did not tell Vuk Nastic that any photos depicting nudity had been discovered nor was he told of any impending criminal investigation.

21. In his affidavit in support of issuance of the search warrant, defendant MORENO made the following material misrepresentations:

(a) that the photographs depicted sexual abuse;

(b) that the children were posing or modeling to produce child pornography.

22. In his affidavit in support of issuance of the search warrant, defendant MORENO made the following material omissions:

(a) that the photographs discovered on the hard drive of the laptop were interspersed with approximately 7,000 innocuous family photographs;

(b) that there was no evidence that the photographs were taken by the parents or any other adult;

(c) that the allegedly lewd photographs were not segregated into a separate folder;

(d) that there was no evidence that the allegedly lewd photographs were ever accessed after they were uploaded to the hard drive of the laptop;

(e) that there was no evidence that any children other than the minor plaintiffs were depicted in a nude or semi-nude state;

(f) that there was no evidence that the laptop had been used to access child pornography sites;

(g) that there was no evidence that the suspect photographs had been disseminated to others;

(h) that the children could have taken the photographs themselves and in some cases used a timer so that both could appear in them;

(i) that video in the collection seized from the laptop showed Vuk Nastic telling N.N. to stop dancing nude and then spanking her.

23. If the magistrate presented with the warrant affidavit had been told the true facts, the warrant would never have been issued.

24. On the day of the search, MORENO interviewed the parents who both denied knowledge of the photographs.  The children readily admitted that they had taken the photographs and that the parents were not involved.

25. MORENO nevertheless arrested the parents from the home without an arrest warrant in violation of the parents fourth amendment rights.

26. Defendant GONZALEZ took custody of the children without a warrant and without evidence that the children were in imminent danger of bodily injury or death and in the absence of any necessity because the children's grandmother was residing in the home and capable of taking care of them. Defendant GONZALEZ in a report to the court falsely stated that one of the photographs depicted an erect penis.

27. The dependency judge ordered the children detained based on misrepresentations of GONZALEZ, WILLEY and ESPARZA-ZAVALA including inaccurate descriptions of the photographs and the false assertion that the laptop contained over 2,200 photographs of the children depicting child pornography.

28. When it became apparent to the Human Services Agency that there was no evidence that the parents had taken the photographs or were even aware of them, the parents submitted the case on an amended petition charging them with failure to supervise the children.  The parents were told that in exchange for submitting on the modified allegations, the children would be returned to them after a few sessions in counseling.

29. Instead of returning the children after the parents totally complied with the Agency's demands, the Agency filed a subsequent petition resurrecting the claims in the original petition and adding allegations that Vuk Nastic had touched N.N.'s intimate body parts.  N.N. was subjected to a forensic interview where she disclosed the "touching."  In that interview and in

reports to WILLEY, her foster mother and therapist, N.N. was never asked if the touching related to bathing, drying-off or hygiene.

30. The Agency paid for both children's therapy at the office of defendant COLIN MCGRATTAN. N.N. was seen by Diane Redmon, an intern working in defendant MCGRATTAN'S office. D.N. was seen by MCGRATTAN himself. Purportedly the therapy was intended to help the children deal with separation from their parents and adjustment to the foster home. The therapy barely touched on these concerns. Instead MCGRATTAN used the therapy sessions to interrogate D.N in an effort to elicit damaging admissions from him that his father was involved in the photography. WILLEY fed MCGRATTAN information about the case to assist him in breaking D.N. down. MCGRATTAN, abandoning all professional standards constantly pressured D.N. to admit that he did not take the photographs. MCGRATTAN accused D.N of lying to protect his father. MCGRATTAN solicited advice from WILLEY about how he should interrogate D.N. to carry out the joint effort to make a case against the parents.

31. During the time the children were in foster care, the parents were not given notice of medical appointments and were denied the right to attend them.

32. During the time the children were in foster care, they were forced to attend services at a Roman Catholic church rather than being permitted to attend a church of their own faith, the Serbian Orthodox Church, or a nearby Greek Orthodox church which the parents agreed would be an acceptable alternative. In not respecting the religious preferences of the parents, WILLEY and ESPARZA-ZAVALA violated the children's first amendment rights.

33. In February, 2011, the juvenile case was dismissed and the children returned to the parents. At the close of the case, county counsel ackowledged that after carefully reviewing the photographs, it was obvious that the parents were not involved. County counsel also conceded that there was no evidence supporting the sexual molest claim against Vuk Nastic. MCGRATTAN apologized to D.N. for not believing him.

COMPLAINT FOR DAMAGES

**STATEMENT OF DAMAGES**

34. As a direct and proximate result of the events alleged in this complaint, plaintiffs sustained injuries and damages including, but not limited to: pain, suffering, injuries to their bodies, as well as severe emotional distress, fear, anxiety, embarrassment and humiliation, all to their general damage in an amount according to proof.

33. As a further direct and proximate result of the incident alleged in this complaint, plaintiffs incurred attorney's fees, bail expense and other incidental expenses, all to their special damage in an amount according to proof.

34. In doing the things alleged herein, each of the individual defendants named in this complaint acted willfully and maliciously and in reckless or callous disregard of the plaintiffs' rights justifying an award of punitive damages in accordance with proof.

35. Plaintiffs have been compelled to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to reasonable attorney's fees pursuant to Title 42, United States Code § 1988.

**COUNT ONE**
Violation of Civil Rights
Title 42 U.S.C. Section 1983

36. Plaintiffs reallege and incorporate herein by reference the allegations set forth in Paragraphs 1 through 35 of this complaint.

37. In doing the acts complained of herein, the individual defendants acted under color of state law to deprive plaintiffs as alleged herein, of constitutionally protected rights including, but not limited to:

(a) the right not to be deprived of liberty without due process of law;

(b) the right to be free from unreasonable interference with parent-child relationships;

(c) the right to procedural due process;

(d) the right to be free from unreasonable searches and seizures;

(e) the right to be free from arbitrary intrusions on plaintiffs' physical and emotional well-being;

(f) their right to exercise their religion under the first amendment.

38. As a direct and proximate result of the acts complained of herein, plaintiffs have suffered general and special damages as set forth in this complaint.

**WHEREFORE**, plaintiffs pray for relief as hereinafter set forth.

**COUNT TWO**
Violation of Civil Rights
Title 42, U.S.C § 1983
(County of San Joaquin)

39. Plaintiffs reallege and incorporates herein by reference the allegations set forth in paragraphs 1 through 38 of this complaint.

40. The individual defendants, in denying the rights enumerated in Count One of this complaint, acted pursuant to a policy and custom of the County of San Joaquin.

41. The County failed to train its social workers and deputy sheriffs in constitutional requirements pertaining to search and arrest warrants, the standards for removal of children from their homes and the requirements to respect parents' rights in matters of religion and the right to be present for medical examinations.

42. As a direct and proximate result of the acts complained of herein, plaintiffs have suffered general and special damages as set forth in this complaint.

**WHEREFORE,** plaintiffs pray for relief as hereinafter set forth.

**COUNT THREE**
Intentional Infliction of Emotional Distress
(All Defendants)

43. Plaintiffs reallege and incorporates herein by reference the allegations set forth in paragraphs 1 through 34 of this complaint.

44. The conduct of the defendants was intentional

45. The conduct was extreme and outrageous.

46. As a direct and proximate result of the acts complained of herein, plaintiffs have suffered extreme emotional distress.

**COUNT FOUR**
Negligence
(All Defendants)

47. Plaintiffs reallege and incorporates herein by reference the allegations set forth in paragraphs 1 through 34 of this complaint.

48. Defendants owed plaintiffs a duty of care.

49. Defendants breached their duty.

50. As a direct and proximate result of the acts complained of herein, plaintiffs have suffered damages as set forth below.

51. Prior to filing this complaint, plaintiffs presented a timely claim under Section 910 of the Government Code. The claim was denied on March 23, 2011.

**JURY TRIAL DEMAND**

52. Plaintiffs demand a jury trial in this matter.

COMPLAINT FOR DAMAGES

# PRAYER

**WHEREFORE**, plaintiffs pray for judgment against the defendants as follows:

1. General damages according to proof against all defendants;
2. Special damages according to proof against all defendants;
3. Punitive damages according to proof against the individual defendants;
4. Attorneys' fees pursuant to statute against all defendants;
5. Costs of suit; and
6. For such other and further relief as the Court deems appropriate.

DATED: September 23, 2011

/s/ David J. Beauvais
DAVID J. BEAUVAIS
Attorney for Plaintiffs

COMPLAINT FOR DAMAGES